IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| CHRISTOPHER WILLIAM TEMPLIN, #02154580 | § § § |
| | §   CIVIL ACTION NO. 4:20CV360-ALM-CAN |
| VS. | § § § |
| DIRECTOR, TDCJ-CID | § |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner Christopher William Templin, an inmate confined in the Texas prison system, with the assistance of counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to United States Magistrate Judge Christine A. Nowak for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

**I. PROCEDURAL BACKGROUND**

Petitioner is challenging his Cooke County conviction, Cause No. CR15-00170. On June 15, 2017, a jury found Petitioner guilty of injury to a child. (Dkt. #21-12, p. 344). In accordance with the jury's verdict on punishment, the trial court sentenced Petitioner to seventy-five years' confinement and assessed a $10,000 fine. (Dkt. #21-12, p. 344-46).

Petitioner appealed his conviction, which was affirmed on January 24, 2019. *Templin v. State*, No. 02-17-00229-CR, 2019 WL 311145 (Tex. App. Jan. 24, 2019) (Dkt. #21-2). Petitioner was granted an extension of time, until March 27, 2019, in which to file a petition for discretionary review ("PDR") with the Texas Court of Criminal Appeals ("TCCA") (Dkt. #21-7), but no PDR

was ever filed. (Dkt. #21-9; Dkt. #1, p. 2). Petitioner did not file a petition for a writ of certiorari with the Supreme Court. (Dkt. #1, p. 2).

On May 3, 2019, Petitioner, with the assistance of counsel, filed an application for state habeas corpus relief. (Dkt. #21-29, pp. 19-47). The TCCA dismissed the application because the conviction was not final—the mandate had not issued when the application was filed. (Dkt. #21-28). On July 19, 2019, with the assistance of counsel, Petitioner again filed an application for state habeas relief. (Dkt. #21-31, pp. 19-36). On September 25, 2019, the TCCA denied the state habeas application without a written order. (Dkt. #12-30).

Petitioner, with the assistance of different counsel, filed the instant federal petition on April 28, 2020. Petitioner asserts that he "was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel's acknowledged lack of preparedness resulted in the admission of numerous hearsay statements of the complainant." (Dkt. #1, pp. 4-5). Petitioner identifies the following instances of inadmissible hearsay:

1. The victim's mother, "Angela," testified over trial counsel's objection that the victim, "Samuel," disclosed that Petitioner hurt him and testified without further objection from trial counsel that the victim "would say things that indicated he was afraid of Petitioner."

2. Samuel's paternal grandfather, "Aaron," testified over trial counsel's general and inadequate objection that Samuel told him Petitioner repeatedly hurt him and testified without objection from trial counsel that Samuel told him Petitioner made him turn in circles while hitting him.

3. The CAC therapist, Sharon Beam, testified without objection from trial counsel that Samuel "happily told her that he remembered telling the DFPS caseworker that '[Petitioner] didn't kill him.'"

4. The DFPS caseworker, Jennifer Ware, testified without objection from trial counsel that Samuel told her Petitioner "had not 'killed him,'" that Samuel made outcry statements in which he "'consistently' stated that [Petitioner] had 'hurt' him," and that Samuel seemed proud he "overcame," a statement

>   that Ware speculated was connected to the allegation that Petitioner caused his injuries.

(Dkt. #1, pp. 4-5).[1] The Director filed a response, arguing that Petitioner's claims are unexhausted and procedurally barred or without merit. (Dkt. #17). Petitioner, through counsel, filed a reply. (Dkt. #26).

## II. FACTUAL BACKGROUND

The Second District Court of Appeals set out the facts as follows:

> Angela lived with her two children, Samuel and Lisa.[1] Templin also lived with Angela[] and her children and would occasionally watch Samuel while Angela was at work.
>
>> [FN1] We use aliases to refer to the complainant and his relatives. *See* Tex. R. App. P. 9.8 cmt., 9.10; 2d Tex. App. (Fort Worth) Loc. R. 7.
>
> On February 2, 2015, Angela spent time with Templin before leaving for work at 4:00 p.m. Angela left Templin in charge of her children. When Angela returned home from work at 10:00 p.m., Samuel was in bed and told her that his feet hurt. Angela then saw that his feet were "all red." Angela and Kathy Brown, Samuel's paternal grandmother,[2] took Samuel to a hospital the next day where it was determined that his feet had been severely burned and his left foot apparently had been held down "in scalding hot water." Samuel also had bruises on a large portion of his body, including on his penis. Samuel's elevated enzyme content indicated that his bruising was the result of "significant blunt force trauma to his muscles." Medical personnel concluded that Samuel's injuries were the result of "significant traumatic injuries and child physical abuse."
>
>> [FN2] Samuel's father—Kathy's son—had died in 2011.
>
> Based on the hospital's report, DFPS became involved and sent Samuel to a child-advocacy center for a forensic interview on February 12, 2015. But in the interview, Samuel never said who had hurt him.
>
> . . . .
>
> At trial, Angela testified that Samuel told her Templin hurt him. Templin's hearsay objection to this statement was overruled. Angela then testified that she believed Samuel was afraid of Templin because of "[t]he things that [Samuel] says."

---

[1] The Court refers to the child victim and his family members by the aliases that the state court used on direct appeal, including Samuel (the victim), Angela (the victim's mother), and Aaron (the victim's grandfather).

> Templin did not object to this. Aaron [Samuel's paternal grandfather] also testified, with no objection by Templin, that Samuel appeared to be afraid of Templin because he "associates that [February 2] incident with Chris." Samuel's therapist similarly stated that Samuel happily told her that he remembered telling his DFPS caseworker that "Chris didn't kill [him]." During his subsequent cross-examination of the caseworker, Templin questioned her about Samuel's statement that Templin had not killed him. The caseworker stated that Samuel seemed proud that he "overcame."
>
> Michael Warren, the lead investigator on the case, was designated as an expert witness on "crime scene reconstruction, child abuse [and] immersion burns" by the State. Warren testified to the likely causes of Samuel's injuries and why the non-injured portions of his body had been "spared" injury because they had been covered. Templin objected to Warren's testimony and asked to conduct a voir dire examination of Warren "to see how he knows what [sparing] is indicative of." The trial court denied the request.
>
> The jury found Templin guilty of the indicted offense, found the enhancement paragraph true based on Templin's plea of true, and assessed his punishment at seventy-five years' confinement. The trial court entered judgment in accordance with the jury's verdict. Templin's verified motion for new trial and in arrest of judgment was deemed denied. *See* Tex. R. App. P. 21.8(c), 22.4(b).

*Templin*, No. 02-17-00229-CR, 2019 WL 311145, at **1, 2 (Dkt. #21-2, pp. 2-3, 5-6).

### III.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).

The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Furthermore, a state court's factual findings are entitled to deference and are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Moore*, 313 F.3d at 881 (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286

5

F.3d 230, 246 (5th Cir. 2002). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98; *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

"In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Thus, a state application that is denied without written order by the TCCA, as in the present case, is an adjudication on the merits. *See Singleton*, 178 F.3d at 384; *Ex parte Torres*, 943 S.W.2d at 472.

In addition to the standard of review imposed by the AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court

6

recently explained that, while the passage of the AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, ___ U.S. ___, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must also satisfy *Brecht*, even if the AEDPA applies. *See id.* ("[A] federal court must deny relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original). Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); or (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## IV. ANALYSIS

Petitioner asserts that he "was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel's acknowledged lack of preparedness resulted in the admission of numerous hearsay statements of the complainant." (Dkt. #1, pp. 4-5). To reiterate, Petitioner identifies the following instances of inadmissible hearsay:

1. The victim's mother, "Angela," testified over trial counsel's objection that the victim, "Samuel," disclosed that Petitioner hurt him and testified without further objection from trial counsel that the victim "would say things that indicated he was afraid of Petitioner."

    2.    Samuel's paternal grandfather, "Aaron," testified over trial counsel's general and inadequate objection that Samuel told him Petitioner repeatedly hurt him and testified without objection from trial counsel that Samuel told him Petitioner made him turn in circles while hitting him.

    3.    The CAC therapist, Sharon Beam, testified without objection from trial counsel that Samuel "happily told her that he remembered telling the DFPS caseworker that '[Petitioner] didn't kill him.'"

    4.    The DFPS caseworker, Jennifer Ware, testified without objection from trial counsel that Samuel told her Petitioner "had not 'killed him,'" that Samuel made outcry statements in which he "'consistently' stated that [Petitioner] had 'hurt' him," and that Samuel seemed proud he "overcame," a statement that Ware speculated was connected to the allegation that Petitioner caused his injuries.

(Dkt. #1, pp. 4-5).

The Director contends that Petitioner's first and second grounds for relief are wholly unexhausted and that his fourth ground for relief is partially unexhausted. The Director also argues that Petitioner's unexhausted claims are now procedurally barred. A review of Petitioner's state habeas application indicates that these claims were arguably, although perhaps inartfully, raised. Furthermore, a court can look past the question of procedural default if the claims can be resolved more easily on the merits. *Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004); *Taylor v. Thaler*, No. 4:04CV150, 2009 WL 2833453, at *3 (E.D. Tex. Aug. 31, 2009), *aff'd*, 397 F. App'x 104 (5th Cir. 2010). In the present case, the Court finds that it is easier to resolve the claims on the merits.

A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687.

8

Under the first *Strickland* prong, the petitioner must show that counsel's performance was deficient. *Id.* To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness examined under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The *Strickland* court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .

*Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Under the second prong of the *Strickland* test, the petitioner must show that his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

In addition to applying the *Strickland* two-prong test, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of

[28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). Reviewing Petitioner's ineffective assistance of counsel claim through the lens of the AEDPA means that he has a higher bar to exceed in order to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The Court must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Furthermore, a petitioner's allegations of ineffective assistance of counsel must be supported by the record. *United States v. Johnson*, 679 F.2d 54, 58-59 (5th Cir. 1982). Even when liberally construing pro se pleadings, "mere conclusory allegations on a critical issue . . . are insufficient to raise a constitutional issue." *Black v. Davis*, 902 F.3d 541, 547 (5th Cir. 2018) (citation omitted). More specifically, conclusory statements are insufficient to sustain a claim of ineffectiveness. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001).

In connection with his attack on trial counsel's competence in failing to object to witnesses testifying to Samuel's hearsay statements, trial counsel submitted an affidavit in the state habeas proceeding stating that her failure to object to the hearsay statements constituted deficient performance and was not reasonable trial strategy. In pertinent part, the affidavit provides:

> I filed a Motion to suppress the hearsay outcry statement of Aaron Brown before trial but I never requested a hearing on the motion before trial or otherwise argued his suppress [sic]. This was not a trial strategy but was an oversight.
>
> I also did not object to the Complainant child's mother Angela's hearsay testimony in regards as to what the child Samuel told her after the first objection. This was not a part of trial strategy.
>
> I did not object to the complainant child's therapist as to Samuel's hearsay statements. This was not a part of trial strategy.
>
> I elicited the caseworker's testimony about the same statement. This was not a trial strategy.
>
> I believe that my failure to object to these numerous statements resulted in the admission of hearsay statements that would not have been admissible otherwise. This was not a trial strategy and was indeed extremely harmful to my client's defense to the point that I was not functioning as counsel guaranteed by the Sixth Amendment of the U.S. Constitution.
>
> At the time of trial I was suffering from severe but undiagnosed health complications, for which I had surgery very soon after the trial. I enlisted the help of Prudence Sanchez but Ms. Sanchez had very limited experience at felony trials and I was the lead attorney in charge of trial strategy.

(Dkt. #21-31, pp. 37-38). Trial counsel's affidavit—executed in May 2019—almost two years after the trial—"fails to reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Co-counsel, Ms. Sanchez, did not submit an affidavit, and the record reflects that she also handled the witness examination. Reliance on "the harsh light of hindsight," even by counsel herself, is what the *Strickland* standards prohibit. *Bell v. Cone*, 535 U.S. 685, 702 (2002); *Crawford v. Lee*, No.

11

3:17-CV-105-SA-DAS, 2020 WL 5806889, at *14 (N.D. Miss. Sept. 29, 2020), *aff'd sub nom. Crawford v. Cain*, 55 F.4th 981 (5th Cir. 2022).

To that end, it is possible that time has distorted trial counsel's recollection and that counsel herself may have forgotten the circumstances she and her co-counsel faced. *See Crawford*, No. 3:17-CV-105-SA-DAS, 2020 WL 5806889, at *14. Trial counsel's affidavit omits that she and her co-counsel did lodge objections, including relevant hearsay objections, some of which the trial court sustained and others which the trial court overruled. Trial counsel's affidavit shows that she is second-guessing herself and co-counsel, and her hindsight is no more accurate nor determinative than a court's hindsight review would be. Now that Petitioner has been convicted, trial counsel speculates that had she or co-counsel objected to the instances of hearsay, they would not have been admitted. But that is not the standard for this Court's decision. *See id.* at *15. As the Supreme Court stated:

> After an adverse verdict at trial even the most experienced counsel may find it difficult to resist asking whether a different strategy might have been better, and, in the course of that reflection, to magnify their own responsibility for an unfavorable outcome. *Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind. 466 U.S., at 688, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 109-10.

The record as a whole reflects trial counsel's meaningful adversarial testing of the State's case. (*See generally* Dkt. ##21-20, 21-21, 21-22). With respect to Angela, trial counsel lodged a hearsay objection to her testimony that Samuel said Petitioner had hurt him, but the trial court overruled that objection. (Dkt. #21-20, p. 34). Trial counsel did not lodge another objection to Angela's subsequent testimony that Samuel would say things that indicated that he was afraid of Petitioner. (Dkt. #21-20, p. 34). Trial counsel reasonably could have believed that Angela's testimony was admissible as a statement of Samuel's state of mind towards Petitioner under Texas

12

Rule of Evidence 803(3). Furthermore, Angela did not testify as to any specific statements Samuel made that would indicate he was afraid of Petitioner. (Dkt. #21-20, p. 34). Trial counsel's failure to lodge another hearsay objection was not objectively unreasonable given that her previous hearsay objection was overruled, and that Angela's testimony was vague and did not include any specific statements that Samuel had made.

Next, Petitioner takes issue with trial counsel's handling of Aaron's following testimony:

[PROSECUTOR]. Now, I'm going to ask you some questions and don't tell me what [Samuel] told you, okay? Don't tell me what he told you. But were you in a room with [Samuel] and he made some sort of outcry to you?

> [TRIAL COUNSEL]: Objection, Your Honor? . . . . That's an improper question.
>
> [THE COURT]: Overruled.

[PROSECUTOR]. And not what he told you, but did he name a person when he told you that?

[AARON]. Yes, he did.

[PROSECUTOR]. Has he made other sporadic statements about abuse since that time?

[AARON]. Yes, half a dozen.

[PROSECUTOR]. And have those statements remained consistent?

[AARON]. Absolutely.

[PROSECUTOR]. Do you recognize Chris Templin in the courtroom today?

[AARON]. Yes.

[PROSECUTOR]. And can you point out an article of clothing he's wearing and where he's sitting?

[AARON]. He's in the light blue shirt there sitting at that table.

> [PROSECUTOR]. May the record reflect that the witness has identified the Defendant?

13

> [THE COURT]: Yes, sir, the record may so reflect.

(Dkt. #21-20, pp. 65-66). Trial counsel did lodge an objection this testimony, but the trial court overruled the objection. The fact that trial counsel's objection was not successful does not equate to deficient performance or prejudice under *Strickland*. *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

Furthermore, Aaron did not testify as to what Samuel told him; rather, Aaron testified that Samuel made an outcry and then identified Petitioner as the defendant. As such, trial counsel's failure to make a hearsay objection, especially after his initial objection was overruled, was not objectively unreasonable. Later, Aaron testified without objection that Samuel told him that Petitioner would make him turn in circles while Petitioner hit him. (Dkt. #21-20, p. 86). Even assuming trial counsel was deficient for not objecting to this testimony, considering Angela's earlier testimony that Samuel said that Petitioner had hurt him, Aaron's testimony regarding Petitioner hitting Samuel was cumulative. The failure to object to cumulative evidence is harmless and will not support a claim of ineffective assistance of counsel. *Kincade v. Livingston*, No. 6:14CV250, 2017 WL 4225227, at *5 (E.D. Tex. Sept. 22, 2017) (citing *Darby v. State*, 922 S.W.2d 614, 624 (Tex. App. 1996)).

The CAC therapist testified without objection that Samuel "was happy" when he told her that he remembered telling a DFPS caseworker that "Chris didn't kill [him]."[2] (Dkt. #21-20, pp. 122-23). Prior to this testimony, the therapist testified to observing behaviors in Samuel consistent with abuse, but she also testified that Samuel said, "nobody hurt them," when referring to his feet,

---

[2] Trial counsel raised a hearsay objection to the therapist's testimony regarding what the DFPS caseworker had told her, and the trial court sustained that objection. (Dkt. #20-21, p. 122).

14

which is arguably beneficial to Petitioner. (Dkt. #12-20, p. 120). Trial counsel's failure to object to this testimony was not objectively unreasonable.

Similarly, on cross-examination of the DFPS caseworker, trial counsel elicited testimony on the possibility that Samuel made an unreliable outcry when he said that Petitioner "didn't kill him." (Dkt. #21-20, pp. 146-47). Eliciting such testimony in an attempt to show that Samuel was trying to retract his earlier outcry was not objectively unreasonable. The caseworker's additional testimony that Samuel made outcry statements in which he consistently stated Petitioner had hurt him, and that Samuel seemed proud he "overcame," a statement that the caseworker speculated was connected to the allegation that Petitioner caused his injuries, was cumulative of Angela's earlier testimony that Samuel said that Petitioner had hurt him. Thus, even assuming trial counsel was deficient in eliciting such testimony, cumulative evidence is harmless and will not support a claim of ineffective assistance of counsel. *Kincade*, No. 6:14CV250, 2017 WL 4225227, at *5 (citing *Darby*, 922 S.W.2d at 624).

Moreover, even had the complained-of-testimony been suppressed, there was no shortage of uncontested evidence supporting the jury verdict. In this case, the jury heard testimony from Samuel's mother Angela that Samuel returned from his paternal grandparents' home unharmed on Sunday evening; that on Monday morning and afternoon Samuel remained in Angela's care while Petitioner was at work and away from the home; that on Monday between 4:00 p.m. and 4:30 p.m., Angela left Samuel with Petitioner to go to work; and that Samuel first appeared "fussy" and had red feet when Angela returned home from work Monday night between 9:30 p.m. and 10:00 p.m. following Samuel's stay with Petitioner as his caregiver. (Dkt. #21-20, pp. 24-27). Samuel's paternal grandfather Aaron corroborated Angela's timeline and version of events. (Dkt. #21-20, p. 62). The jury also heard that Angela called Samuel's paternal grandparents and the pharmacist on

15

Monday night because she was concerned about Samuel's condition when she arrived home. (Dkt. #21-20, pp. 25-27). Furthermore, the jury heard that Angela and Samuel's paternal grandmother took Samuel to the doctor the next morning. (Dkt. #21-20, p. 27).

The jury was presented with extensive evidence that Samuel's injuries were the result of abuse. (*See* Dkt. #21-20, pp. 119-20, 124-125 (CAC therapist's testimony regarding Samuel's abuse-indicating behaviors); Dkt. #21-20, pp. 154-64 (investigator's testimony regarding indications of abuse); Dkt. #21-21, pp. 7-10, 17-36 (expert medical testimony regarding Samuel's injuries)). In particular, the expert witness, Dr. Cox, a pediatrician specializing in child abuse, described Samuel's injuries for the jury as including bruises likely inflicted by spanking or hitting Samuel with an object, trauma to the tip of Samuel's penis likely from pinching, and burns on Samuel's feet consistent with scalding from hot water. (Dkt. #21-21, pp. 7-10, 17-36). Angela testified that she had not bathed Samuel on the night in question; rather, Petitioner had bathed him. (Dkt. #21-20, pp. 32-33). Petitioner corroborated Angela's testimony when he testified at trial that he bathed Samuel on the night in question. (Dkt. #21-21, p. 143).

The jury also heard evidence that Samuel's paternal grandparents and Angela were his regular caretakers before and after the incident of abuse. (Dkt. #21-20, pp. 68-69, 71-72, 77-79, 140). Aaron testified that he had never seen Angela "spank" Samuel, (Dkt. #21-20, p. 80), and that after the incident, he had witnessed changes in Samuel, including Samuel's fear of people—especially men—and bathing (Dkt. #21-20, p. 69). Furthermore, the jury heard a DFPS caseworker testify that based on her professional observations of Samuel's interactions with Angela and his paternal grandparents, she had no concerns that any of them had abused Samuel. (Dkt. #21-20, pp. 143-44). The DFPS caseworker testified that, to her knowledge, Samuel never made an outcry statement that Angela or his paternal grandparents had harmed him. (Dkt. #21-20, p. 145).

Additionally, the jury heard that since the incident, Samuel has been in his paternal grandparents' and Angela's joint care (Dkt. #21-20, p. 140), and that his paternal grandparents take Samuel to bi-weekly therapy appointments to treat his muscular dystrophy (Dkt. #21-20, p. 71).

Thus, the jury was presented with evidence that Samuel—after returning unharmed from his paternal grandparents' care and remaining unharmed while in Angela's case the following day—suffered injuries after being in Petitioner's care. The jury heard from Angela and from Petitioner himself that Petitioner bathed Samuel. The jury also heard ample evidence that Samuel suffered multiple injuries that were indicative of physical abuse and, specifically, that Samuel endured burns to his feet that were consistent with scalding from hot water. The jury heard that Samuel told Angela that Petitioner, who admittedly bathed Samuel, had hurt him.

Plaintiff cannot demonstrate prejudice from his counsel's failure to object to the admission of the complained-of-testimony at trial. *Strickland*, 466 U.S. at 693 ("[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."). Indeed, much of the complained-of-testimony was cumulative of evidence already admitted; namely, that Samuel said that Petitioner had hurt him. As such, Petitioner has failed to demonstrate that, but for trial counsel's alleged unprofessional errors, the jury would have found Petitioner not guilty. Moreover, Petitioner has failed to demonstrate that the TCCA's denial of this claim was unreasonable or contrary to clearly established federal law. Thus, Petitioner has not shown that he is entitled to federal habeas corpus relief with respect to his ineffective assistance of counsel claims.

## V. CONCLUSION

Petitioner has failed to show that his ineffective assistance of counsel claims have merit. Petitioner has failed to demonstrate that trial counsel's representation fell below an objective standard of reasonableness or that there is a reasonability probability that, but for trial counsel's alleged unprofessional errors, the result of the proceeding would have been different. Above all, Petitioner fails to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Williams*, 529 U.S. at 402-03, 405-06; *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). In sum, Petitioner fails to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be denied and dismissed.

## VI. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that the Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting that "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended the Court find that Petitioner is not entitled to a certificate of appealability.

## VII.  RECOMMENDATION

It is recommended that the above-styled petition filed under 28 U.S.C. § 2254 be denied and that the case be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 22nd day of March, 2023.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE